## M. J. Mays v. The State.

No. 11645.   Delivered November 14, 1928.

The opinion states the case.

*Seale & Denman* of Nacogdoches, for appellant.   On misconduct of jury appellant cites: Mitchell v. State, 36 S. W. 456; Hardiman v. State, 53 S. W. 121; Ainsworth v. State, 287 S. W. 250; Brewer v. State, 262 S. W. 765; Tutt v. State, 91 S. W. 584; Morawitz v. State, 91 S. W. 227; Horn v. State, 97 S. W. 822; Clements v. State, 153 S. W. 1137; Blocker v. State, 61 S. W. 391, May v. State, 127 S. W. 832; McDougal v. State, 194 S. W. 944 and Brown v. State, 242 S. W. 218.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, Judge.—Offense, the unlawful sale of intoxicating liquor; penalty, one year.

Appellant pleaded guilty to the charge and in due form made application for suspended sentence, supporting same by his evidence. No issue of his guilt was made.   The only issue to be determined by the jury was his right to a suspended sentence.   The jury refused to recommend a suspension of his sentence.

Appellant in his motion for new trial alleges misconduct of the jury in the following respect:   That while the jury was still deliberating and before it reached a verdict and while it stood nine against suspending the sentence and three for it, other and different testimony regarding the defendant was received and discussed by the

jury, which was not admitted in evidence upon the trial of the case, as follows: That R. C. White, foreman of the jury, at that time made the statement in the presence and hearing of the jury that the father of defendant, a short time before the alleged commission of the offense, came to his, White's, store at Appleby, Texas, for the purpose of purchasing fruit jars, leaving the inference that said fruit jars were wanted by the father of this defendant for the purpose of putting whiskey in same for sale; and that R. C. McIlwain, another one of the jurors, at that time made the statement that cars were continually going and coming from the premises where defendant lived and that said cars were going there for the purposes of getting whiskey, and that said C. R. Mays, father of the defendant, M. J. Mays, was making whiskey for sale, and that the defendant, M. J. Mays, was selling the same, and the whiskey that was being drunk in and around Appleby was coming from the home of said C. R. Mays, where this defendant lived.

The three jurors who were for suspension of appellant's sentence previous to these remarks agreed to a verdict of guilty without suspension of sentence, after hearing said statements; each filed affidavits and testified on motion for new trial to this effect and under a vigorous and somewhat caustic cross-examination by the District Attorney on a hearing of appellant's motion for a new trial, they reiterated such testimony.

Juror White, for the state, testified in part on cross-examination:

"I said a while ago that I made a statement in a casual way to the jury that Mr. Mays came to my store to inquire about quart fruit jars. As to what we were discussing at that time, I will state we were really discussing drinking and whisky being sold all over the country; that is what we were discussing. As to whether I know, as a matter of common knowledge, that whisky is usually put up in quart fruit jars and sold, I will state that I think so; that is the way they tell me. I do not know that I said anything to the jury about Mr. Mays buying any kind of dry goods from my store."

Mr. McIlwain, the other juror, testifying as a witness for the State on the said motion, denied making the exact statement testified to by the three jurors but admitted he stated to them before a verdict was agreed to and while the jury stood nine to three as aforesaid:

"Well, the boys around Appleby drink and carouse around. I don't know where they get it; I don't know whether this fellow makes it or not. * * * but they go on carousing and drinking so that two young men had to be carried off from church up there."

None of the other jurors testified with reference to this matter save the five above mentioned.

The clear inference to be drawn from the undisputed evidence shown in this record is that appellant was connected with and in some measure responsible for the carousing and drinking going on among the boys in the community where he lived, and that he and his father were engaged in the unlawful handling of whiskey. No such testimony was introduced in evidence before the jury. If the general reputation of appellant was bad, that fact should have been proven by the State in opposition to his application for a suspension of sentence. Some of these statements were obviously inadmissible from the witness-stand where appellant would have had the opportunity of cross-examination. Its effect must have been more harmful when given secretly to the jury without the opportunity of cross-examination or rebuttal. It was said in Brown v. State, 101 Tex. Crim. Rep. 642:

"It has been held many times that where after retirement the jury receives other evidence damaging to appellant the presumption of injury will obtain, and that the burden rests upon the State to rebut such presumption."

Sec. 7 of Art. 753, C. C. P., provides that new trials in cases of felony shall be granted where the jury after retiring to deliberate upon a case have received other testimony, and where this testimony is of a prejudicial and harmful character, this Court will not speculate upon its injury to appellant. Sparks v. State, 300 S. W. 938. See also Howell v. State, 94 Tex. Crim. Rep. 563; McWilliams v. State, 32 Tex. Crim. Rep. 269; authorities cited under Vernon's C. C. P. (1925), Art 753, Subdivision 7. The statements made by these two jurors under the circumstances shown in this record must have been intended to influence the verdict. While there is some dispute about the facts, it conclusively appears that evidence was received of a prejudicial character at a critical time in the deliberations of the jury, and that immediately thereafter the three jurors changed from a favorable to an unfavorable verdict.

Under the statute and uniform holdings of this Court, it is our duty to reverse and remand this case, and it is accordingly so ordered.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.