JESS GLASSGOW v. THE STATE.

No. 14562. Delivered November 25, 1931.

556

The opinion states the case.

*O. B. Pirkey* and *O. H. Atchley,* both of New Boston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is robbery; penalty assessed at confinement in the penitentiary for twenty-five years.

While R. W. Hanks was adjusting his Delco light at night, a man appeared, presented a pistol and forced Hanks to surrender his flashlight and compelled him to walk a long distance into the country to a point near a saw-dust pile, about nine miles from the home of Hanks. It seems that Hanks was a banker. Demand was made that he write a check or order for $5,000, with which demand Hanks complied. Hanks was told that three men would be at the saw-dust pile and that they would treat him rough. The men did not appear, however. After remaining near the saw-dust pile with his assailants, Hanks was shot twice. Two wounds were inflicted and Hanks became unconscious.

When forced to leave home Hanks was without a coat. He was furnished a jacket by his assailant. On the trial there was testimony identifying the jacket mentioned as having belonged to the appellant.

Appellant did not testify but by the testimony of witnesses presented the defense of alibi. Upon that issue several witnesses were introduced, among them, Foster Henson, who gave testimony supporting the appellant's defense of alibi, which testimony, if found to be true by the jury, would have exculpated the appellant. Mrs. Foster Henson likewise gave testimony of the same nature as that of her husband. Hanks was unable to identify the appellant by his appearance. He testified, however, that he recognized the voice of the appellant as the same voice of the man who assaulted him. Hanks also said the size and general outline of the man's physique accorded with that of his assailant.

In bill of exception No. 2 complaint is made of the argument of state's counsel in closing the case in which he used the following language: "Mr. Hanks did not identify the defendant as being the man who robbed him, but of course, Mr. Hanks believes he is the man."

The remarks are not regarded as subject to objection. Hanks' testimony upon the trial touching the size, demeanor and voice of the man

who robbed him as coinciding with that of the appellant was apparently a legitimate basis for the argument of which complaint is made.

On the hearing of the motion for new trial, J. L. Ballow, one of the jurors who rendered the verdict against the appellant, gave in substance the following testimony: That W. B. Freeman, one of the jurors, stated that he was personally acquainted with the Hensons and there was nothing to them except that they were bootleggers and law violators. From Ballow's statement it further appears that while the jury were considering and weighing the evidence, Freeman remarked that "so far as the saw-dust pile was concerned he knew all about that, and so far as the Hensons were concerned he knew them, too; that there wasn't a thing to them; that they were just down there in town and bootlegging and were law violators themselves, and therefore he would not put any confidence in them, or words to that effect.

W. B. Freeman testified in substance as follows: That while considering the saw-dust pile he said he knew where it was and that it was about three miles from his house; that he knew some *Hintons* that lived there; that they were nothing but horse thieves and bootleggers. From his testimony it appears that he had in mind *Hintons* and not *Hensons*. Juror Freeman, during the deliberations of the jury, made remarks regarding persons who lived near the saw-dust pile and who were known to him. He designated them as nothing but horse thieves and bootleggers. Juror Ballow understood these remarks to apply to the appellant's witnesses, Henson and his wife. Such application apparently was a natural one. There were no Hintons among the witnesses at the trial, and there was no occasion to make the remarks touching them. Nothing said with reference to the Hintons would have been relevant at all, but the information given the jury that the Hensons were bootleggers and horse thieves was calculated to destroy any favorable effect that the testimony of Henson and his wife may have made upon the jury. It is not shown that other jurors who consented to the verdict understood and applied the remarks of Freeman as juror Ballow did. But one other juror, namely, Sowell, was introduced, and his testimony as bearing upon the question involved is of no consequence. The state made no effort by the use of other jurors to controvert Ballow's testimony.

At the time the verdict was rendered there was before the jury no explanation of the remarks of Freeman such as was before the court on motion for rehearing. The statement made by Freeman must be interpreted by this court in the light of the facts that were before the jury at the time they rendered the verdict and cannot be measured by the explanation of Freeman that his reference was to the *Hintons* and not the *Hensons*.

In the motion for new trial it also appears that there was some reference to the appellant's failure to take the stand and testify. An analysis

of the references is not deemed desirable or necesasry further than to say that if they do not violate the terms of the statute, article 710, C. C. P., forbidding comment upon the failure of the accused to testify, they come dangerously near to doing so. It is believed, however, that the testimony recited above touching the remarks of juror Freeman was such as transgressed the statutory provisions designated to guard and make effective the provisions of the law guaranteeing a legal trial by an impartial jury, some of which are set forth in subdivisions 7 and 8 of article 753, C. C. P., which have been construed on occasions too numerous to mention, as indicated in Vernon's Ann. Tex. C. C. P., 1925, vol. 3, p. 37, subd. 39, among Zahn v. State, 115 Texas Crim. Rep., 182, 29 S. W. (2d) 763; Bailey v. State, 115 Texas Crim. Rep., 119, 29 S. W. (2d) 784; Brown v. State, 101 Texas Crim. Rep., 639, 276 S. W., 929; Mays v. State, 111 Texas Crim. Rep., 35, 10 S. W. (2d) 1006. That the statement of Freeman was in the nature of evidence harmful to the appellant and discrediting to his witnesses is not open to question.

For the reasons stated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*