## RAY WEST V. STATE

No. 28,653. February 13, 1957.
Appellant's Motion for Rehearing Granted May 1, 1957.

*Martin, Moore & Tackett,* by *Arthur Lee Moore,* Fort Worth, for appellant.

*Jimmy Castledine*, District Attorney, Wichita Falls, and *Leon Douglas*, State's Attorney, Austin, for the state.

DICE, Judge.

The conviction is for the offense of unlawfully keeping a building or room for the purpose of gambling in violation of Art. 625, V.A.P.C.; the punishment, two years in the penitentiary.

The evidence is undisputed that the building in question was a house owned by the appellant, which he and his wife occupied as their residence. The evidence is further undisputed that, on numerous occasions, during the years 1954 and 1955, people went to the place and gambled with dice in a room in the basement of the building, which could be entered by way of an outside entrance.

The testimony shows that, on the occasions when gambling was carried on in the room, free drinks were furnished by the appellant, as well as the dice and other paraphernalia used by the players.

Witnesses called by the state, who had gambled with dice at the place, testified that, in gambling, the players used chips, which, on occasions, were purchased from the person running the game; that, on occasions, the appellant ran the game, sold and cashed the chips, and would pay off and receive payments for bets. The witnesses further testified that about half of the time the players would play and shoot against each other and the other half of the time the players would shoot against the house.

Appellant did not testify, but, by his examination of the witnesses, attempted to show that the room was not maintained as a place to bet and wager with dice, but that the games played were only incidental and merely friendly games between the participants therein.

The jury chose to accept the state's theory that the room was kept by the appellant for the purpose of gambling and to reject his contention that it was not, and we find the evidence sufficient to support its verdict.

We shall discuss the appellant's contentions in the order in which they are presented in his brief and oral argument.

Appellant first complains of certain jury argument made by state's counsel. Such is presented by Bills of Exception Nos. 7 to 18, which reflect that, in nine instances, the court sustained appellant's objection to the argument complained of and instructed the jury to disregard the same, and, in the other three instances, overruled appellant's objection thereto.

Bills of Exception Nos. 9, 10, and 16 present the argument to which appellant's objection was overruled.

Bill of Exception No. 9 complains of the district attorney's statement that he didn't know whether "you presented a little card saying 'Sporting News' on it" in his argument relative to whether appellant's place was open to the public and how entry was made. We find no error in the argument as there were introduced in evidence several calling cards found in the search of appellant's home, which cards contained the appellant's name and the words "Sporting News" printed immediately thereunder.

Bill of Exception No. 10 presents appellant's objection to the district attorney's statement: "I could have paraded lots of witnesses probably forty or fifty out there, according to this boy one night when they were playing craps," on the ground that such statement constituted testimony being given by the district attorney. We find no error in the bill. The statement appears to be a reasonable deduction from the testimony of the state's witness Lyday, wherein he testified that, on one occasion, "there were twenty-five, thirty or forty" people at the appellant's place when a dice game was in progress. The district attorney made no effort to state what the witnesses would testify.

Bill of Exception No. 16 relates to argument of the district attorney, which, he specifically stated, was directed to other gamblers in the county in urging the jury, by their verdict, to tell them that similar gambling activities would not be permitted. We perceive no injury to appellant by reason of such argument.

We have considered the argument complained of in the remaining bills, in the light of the court's action in sustaining appellant's objections thereto, instructing the jury not to consider the same, and the minimum punishment assessed, and are of the opinion that no reversible error is shown.

Appellant next complains of the court's charge.

It is first insisted that the court erred in failing to charge on circumstantial evidence. There being direct evidence that the appellant kept the room for gambling purposes, as charged in the indictment, no error is shown in the court's refusal to instruct the jury on the law of circumstantial evidence. McFaddin v. State, 119 Texas Cr. Rep. 134, 46 S.W. 2d 307.

Appellant next insists that the court erred in refusing to give his requested charges Nos. 1, 3 and 4, which would have authorized the jury to find him guilty of certain lesser misdemeanor offenses, under Articles 618, 624 and 628, V.A.P.C., of gambling or permitting gambling in his home. Art. 694, V.A. C.C.P., authorizes a conviction of a lesser offense where the prosecution is for an offense which includes it. Art. 695, V.A. C.C.P., enumerates certain offenses which are declared to include certain degrees, but does not enumerate the offenses of keeping a building or room for the purpose of gambling.

The rule has been stated that, where the offense charged is not within the provisions of Art. 695, supra, in order to warrant a conviction for a lesser offense than that charged in the indictment, it is necessary that every constituent element of the lesser offense be alleged in the indictment, and that there be no repugnancy between the elements of the lesser offense and those of the offense charged. Tomlin v. State, 155 Texas Cr. Rep. 207, 233 S.W. 2d 303.

In applying the rule to the indictment in the present case, we find that it does not allege all of the essential elements of the lesser offenses under Articles 618, 624 and 628, supra. The indictment does not allege that the appellant gambled in any manner, which is an essential element of the offenses under Articles 618 and 624, supra. Nor did the indictment allege that appellant permitted gambling in his house or upon his premises, the same being a public place, which is an essential element of the offense prescribed in Article 628, supra. Appellant's contention is overruled.

Appellant insists that reversible error is shown because of the admission in evidence of certain articles and paraphernalia identified as having been found in his home by officers acting under a search warrant, over the objection that there was no evidence that such articles were used for the purposes of gambling on his premises, as charged in the indictment.

The articles consisted of a green cloth, a poker chip, deck of cards, a white jacket, carrying case, calling cards, note pads, and a telephone directory; and the court, in his charge, instructed the jury, after enumerating the articles, that they could not consider them as any evidence of appellant's guilt unless they found beyond a reasonable doubt that such articles were used for the purpose of gambling with dice, as charged in the indictment.

Articles and paraphernalia used in the commission of the offense of keeping a building or room for the purpose of being used for gambling are admissible in evidence. Cagle v. State, 147 Texas Cr. Rep. 354, 180 S.W. 2d 928.

Under the court's instruction to the jury not to consider the articles as evidence of guilt unless they believed beyond a reasonable doubt that they were used for the purpose of gambling as charged, we fail to perceive any injury to appellant by reason of the admission of such articles in evidence.

Appellant next insists that the court erred in overruling his motion for new trial because of jury misconduct. It was alleged in the motion, supported by affidavit of the juror Crow, that, during the jury's deliberation before they reached a verdict of guilty, one of the jurors stated to the other jurors that, in the event they should find appellant guilty and assess his punishment in the penitentiary for two years, "he would be required to serve only about six months," and that, as a result of such erroneous statement of the law, at least one of the jurors changed his vote from not guilty to guilty and agreed to find appellant guilty and to assess his punishment at two years in the penitentiary and not to recommend a suspended sentence.

Upon the hearing of the motion, three of the jurors were called to testify.

Juror Crow, upon being called by the appellant, testified that the statement was made during the jury's deliberation on the question of suspension of sentence, and that he thereafter changed his vote from suspension of sentence to that of against a suspension of sentence.

Juror Klein, being called by the appellant, testified in substance that the statement was made.

Juror Blaha, being called as a witness by the state, testified

that the statement was not made but that the jury did discuss the question of parole and time allowed for good behavior.

The decision on the motion for new trial rested within the sound discretion of the trial court; and, in the absence of an abuse of discretion, this court would not be justified in reversing the judgment. Shepherd v. State, 111 Texas Cr. Rep. 4, 10 S.W. 2d 730; Kilpatrick v. State, 155 Texas Cr. Rep. 609, 237 S.W. 2d 996; and Berry v. State, 159 Texas Cr. Rep. 492, 265 S.W. 2d 86. Under the conflicting testimony relative to whether the statement was made as alleged, we are of the opinion that the court did not abuse his discretion in overruling the motion.

The mention of parole and credit for good behavior during the jury's deliberation on the question of punishment did not constitute such misconduct as to demand a new trial. Walker v. State, 150 Texas Cr. Rep. 421, 201 S.W. 2d 823.

Finding no reversible error, the judgment is affirmed.

Opinion approved by the Court.

MORRISON, Presiding Judge, dissenting.

I cannot agree to the affirmance of this conviction for the following reasons:

Bill of Exception No. 10 recites that the district attorney in his argument stated, "We could have taken two weeks to try this law suit. *I could have paraded lots of witnesses, probably forty or fifty out there,* according to this boy one night when they were playing craps." The bill contains the further recitation *"that there was no testimony introduced to support the propriety of the District Attorney's argument other than that shown in this bill of exception."* The bill contains no showing as to what "this boy" had testified or to whom the district attorney was referring. It does contain the recitation that several witnesses had testified that they had participated in "games of dice" at appellant's home on occasions for approximately two years.

When a bill of exception contains the recitations quoted above, then the bill should be appraised without reference to the statement of facts. Sublett v. State, 158 Texas Cr. Rep. 627, 258 S.W. 2d 336. If this is so, we have the bold assertion by the district attorney that he had available but did not call as

witnesses forty or fifty people who could and would have testified favorably to the state.

This same type of argument has been condemned in McNaulty v. State, 138 Texas Cr. Rep. 317, 135 S.W. 2d 987. In that case, we reversed the conviction because the prosecutor in his argument told the jury: "We could have put on many more witnesses that would have testified to the same facts that the witness testified to that we did not put on."

Bill of Exception No. 12 recites that the prosecutor told the jury:

"That's what could happen if he's allowed to go free. He can go back out there and set up his same gambling system *that it took three years to catch him this time* * * * *."

This bill contains the same recitations as the preceding bill. For the prosecutor to tell the jury that the officers of the law had been trying to catch the appellant for three years before they were successful in their efforts when not supported by the record was simply injecting into the record unsworn testimony that was clearly prejudicial to the appellant.

Bill of Exception No. 15 recites that the prosecutor told the jury further:

"Now, that is the purpose of punishment, not only to reform him and tell him you won't tolerate professional gambling in Wichita County *where hundreds and thousands of dollars were lost* * * * *."

It also contains the same recitations as the preceding bills. For the prosecutor to go outside the record and tell the jury that "hundreds and thousands of dollars" had been lost to professional gamblers in his county was certainly calculated to prejudice an accused who had defended on the theory that the dice games which had been proven by the state to have occurred had been "friendly games between the participants" at his home.

The rule of law which provides that the prosecutor shall not give unsworn testimony which is harmful to the accused is so axiomatic as not to require the citation of authority.

I respectfully enter my dissent.

ON APPELLANT'S MOTION FOR REHEARING

DAVIDSON, Judge, dissenting.

I agreed to the affirmance of this case because I was not convinced that appellant was injured by the argument of state's counsel or by the alleged jury misconduct.

Upon reconsideration, I am of the opinion that such conclusion was not warranted as to jury misconduct, but, to the contrary, a fair construction of the evidence shows that appellant was injured by the misconduct of the jury.

The juror Crow testified, upon the hearing of the motion for new trial, that he reached the conclusion early in the deliberations of the jury that appellant was not guilty, and so voted through some four ballots of the jury upon the guilt or innocence of the appellant.

The witness thereafter agreed to a verdict of guilty, whereupon there arose the question of suspension of sentence, which he favored.

Here is what the juror said occurred while the jury was deliberating the question of suspended sentence:

"[Q] I'll ask you if there was any statement made to you and the other jurors by any member of the jury with reference to how much time the defendant would have to serve in the event the jury found him guilty and assessed his punishment at two years? A. There was.

"[Q] Tell the jury what statement was made—tell the court what statement was made to you and the other jurors with reference to how much time the defendant would have to serve if the jury found him guilty and set his punishment at two years? A. About six months.

"[Q] Do you recall who made that statement, Mr. Crow? A. It was the jury foreman.

"[Q] Foreman of the jury? A. Yes, sir."

As to the impression the statement left with the juror, he testified:

"[Q] Well, based on that statement then, — he confines it

— based on the statement that the foreman of the jury made that he would only have to serve — you say you were convinced that he wouldn't have to serve but six months — based on that, was that the reason you changed your vote to not suspend the sentence? A. It was."

The juror was rather extensively cross-examined by the state, as well as by the appellant, upon re-direct examination.

Regardless of the facts above discussed, the record is susceptible of but one construction — which is, that the juror Crow changed his verdict from that favoring suspension of sentence to the assessment of an outright term in the penitentiary because of the statement of the foreman of the jury to the effect that if the jury fixed appellant's punishment at a term in the penitentiary he would only have to serve about six months.

That such statement by the jury foreman was not, in fact, correct and that it was made not merely as an expression of an opinion but as a statement of a positive fact appears not to be debatable.

But, regardless of the effect to be given the statement, the fact remains that it constituted other testimony which was harmful and prejudicial to the rights of the appellant.

The state did not see fit to call the foreman of the jury to testify concerning his making of the statement.

We do not have, here, a case where two jurors engage in a conversation in which one says that a certain statement was made, while the other denied that it was made. In instances where there is such a dispute, the trial court's conclusion prevails unless an abuse of discretion is shown.

Here we have the juror Crow affirming that the foreman of the jury made a certain statement to him in his presence. The foreman of the jury was not called to deny or affirm Crow's statement. Under such circumstance, Crow's testimony should be treated as undisputed.

Whether the statement was or was not made by the jury foreman, the fact remains, nevertheless, that in so far as the juror Crow was concerned the statement was made, for he heard it, believed it to be true, and accepted and acted upon it as being true — all to the injury and harm of the appellant.

So, regardless of whether the statement was or was not made by the foreman of the jury, the fact remains that *in so far as the juror Crow was concerned* the statement *was* made and injury therefrom was suffered by the appellant.

Art. 753, C.C.P., provides that new trials in felony cases shall be granted only in certain instances — among which are those set out in Sec. 7, as follows:

"Where the jury, after having retired to deliberate upon a case, have received other testimony; or where a juror has conversed with any person in regard to the case; or where any juror at any time during the trial or after retiring, may have become so intoxicated as to render it probable his verdict was influenced thereby. The mere drinking of liquor by a juror shall not be sufficient ground for a new trial."

Under that section it has been the long, continuous, and unbroken holding of this court that when it is shown that this provision of Art. 753, C.C.P., has been violated and other testimony has been received, no speculation will be indulged as to probable injury to the accused. Supporting authorities will be found under Note 143 of Art. 753, Vernon's C.C.P.

The holding in Jackson v. State, 157 Texas Cr. Rep. 323, 248 S.W. 2d 748, appears to be directly in point as supporting the conclusion, here, that the statement made by the foreman of the jury and the reliance thereon by the juror Crow require a reversal of this conviction.

Such is also true of the holding in Mays v. State, 111 Texas Cr. Rep. 35, 10 S.W. 2d 1006, where members of the jury who were for a suspension of sentence agreed to a verdict without suspension of sentence after statements had been made in the jury room during deliberations.

Sec. 7 of Art. 753, C.C.P., however, is not the only statutory provision relative to granting of a motion for new trial by reason of jury misconduct: Sec. 8 provides that, in felony cases, a new trial shall be granted "Where, from the misconduct of the jury, the court is of the opinion that the defendant has not received a fair and impartial trial."

All witnesses agreed that during the deliberations of the jury there was a discussion to the effect that, in the event of a

conviction, the appellant would not be required to serve the term which the jury might fix in its verdict.

It was not within the jury's province to entertain or discuss such matters in connection with the guilt or innocence or punishment of the appellant.

The juror Crow appropriated what was said to the harm and injury of the appellant.

Crow's agreement to the verdict was necessary; without his agreement there would have been no verdict.

I am convinced that, under all the facts and circumstances here presented, appellant did not receive that fair and impartial trial which the law guarantees to him.

It is my opinion that because of the misconduct of the jury this conviction must be reversed.

Presiding Judge Morrison is of the opinion that the conviction should be reversed for the reasons stated in his dissenting opinion delivered upon original disposition.

Accordingly, the appellant's motion for rehearing is granted, the judgment of affirmance is set aside, and the judgment of the trial court is now reversed and the cause is remanded.

WOODLEY, Judge, dissenting.

Appellant alleged in his amended motion for new trial that during the deliberations of the jury and before they had reached a verdict one juror stated to the others "that in the event they should find the defendant guilty and assess his punishment in the penitentiary for two years, he would be required to serve only about six months."

The affidavit of the juror G. B. Crow was attached to and made a part of the amended motion for new trial. This affidavit contained the statement that the foreman of the jury told him (Crow) that if the jury found the defendant guilty and assessed his punishment at two years the defendant would not have to serve more than six months, and except for this statement he would never have changed his vote and voted to find the defendant guilty.

The Juror Crow testified at the hearing on the motion for new trial. He testified that the remark attributed to the foreman of the jury was made but not until after the third ballot in which all voted guilty, and that he himself made the statement in the jury room that he had no doubt but that the defendant was guilty but didn't think he ought to be punished.

I quote from the testimony of G. B. Crow shown in the statement of facts on the motion for new trial.

"Q. In other words, nothing was said about the things that you allege in your affidavit before you voted him guilty? A. No, sir.

"Q. Now, did you make the statement in there that you thought he was guilty but that you didn't think he ought to be punished? A. I did.

"Q. You never did think he was not guilty, did you? A. No, sir. * * *.

"Q. Did you make the statement to the other jurors that you had no doubt but what he was guilty? A. I did.

"Q. And yet you voted innocent? A. I told the jury that I had no doubt in my mind that there had been gambling going on out there, but I didn't think the man should be sent to the penitentiary.

"Q. Did you make the statement that you had no doubt that the defendant was guilty? A. I did.

"Q. But that you didn't think he ought to go to the penitentiary? A. Right."

Juror Charles Blaha, upon his examination by appellant's counsel, testified in part:

"Q. Now, I'll ask you if the jury didn't — that is, sometimes there would be two or three talking together; sometimes three talking together in groups, as jurors usually do? A. We were all around the table; there wasn't anybody in any group at any time.

"Q. At all times you were around the table? A. That is correct. * * *

"Q. I'll ask you if you don't remember the foreman of the jury, Mr. Bumpers, I believe is his name * * * A. Yes, sir.

"Q. I'll ask you if you don't remember him saying in substance, that if he was given two years in the penitentiary that he wouldn't have to serve more than five or six months? Did you hear him say that? A. No, sir, I did not hear him say it.

"Q. Did you hear him say anything like that? A. No, sir, not as to any length of time. There was no time mentioned. * * *

"Q. * * * All right, we will get on down to the question of suspended sentence. When they came to the suspended sentence and before the jury finally voted for two years in the penitentiary and not to suspend the sentence, I'll ask you if you recall Mr. Crow saying that he would wear out every pair of breeches in Wichita Falls before he would vote to send the defendant to the penitentiary? A. Yes, sir, he made that statement.

"Q. And after he made that statement, and before he concurred in finding the defendant guilty and assessing his punishment at two years, and not suspend the sentence, I'll ask you if the foreman of the jury didn't say to him there, in substance, and if you didn't hear it, that even if we voted to give him two years in the penitentiary, he will only have to serve about six months?· A. He did not.

"Q. All right. In pursuance of that inquiry, I'll ask you if you didn't hear some other juror or jurors say that they thought the time he would have to serve would be approximately eight months? A. There was no definite month or date or anything mentioned.

"Q. As far as you know * * * you didn't hear it? A. No. There was no such a thing mentioned. I was sitting there at the table."

The testimony of the Juror Blaha raised an issue of fact as to whether or not the jury received evidence after retirement.

Where the trial judge has overruled the motion for new trial and the evidence is not undisputed but there is a conflict in the testimony heard by the trial judge as to whether the jury received other evidence which was prejudicial to the rights of the defendant, this court has uniformly declined to set aside the find-

ings of the trial judge and has not heretofore found an abuse of discretion in the overruling of the motion for new trial. Honeycutt v. State, 157 Texas Cr. Rep. 206, 248 S.W. 2d 124; Cates v. State, 132 Texas Cr. Rep. 634, 106 S.W. 2d 687; Bartlett v. State, 123 Texas Cr. Rep. 464, 59 S.W. 2d 157, Bracken v. State, 121 Texas Cr. Rep. 278, 51 S.W. 2d 379; White v. State, 82 Texas Cr. Rep. 286, 199 S.W. 1117; Whitfield v. State, 104 Texas Cr. Rep. 95, 282 S.W. 2d 595.

The trial judge chose to accept the testimony of the Juror Blaha on the disputed issue and his findings on the conflicting evidence are binding on this court.